## Glen Evans, Appellee, v. George B. Williams and Victor W. Peterson, Appellants.

### Gen. No. 28,514.

1.   BAILMENTS—*weight of evidence as to garage employee's authority to use stored automobile.*   In an action against garage proprietors for damages caused by the wrecking of plaintiff's automobile which was taken from defendant's garage, where it had been stored, by defendants' servant for use on a "joy ride" during which it was wrecked, a finding of the jury that the servant took the car without plaintiff's knowledge or consent is not against the weight of evidence where plaintiff categorically denied having given permission on the time in question or any general permission, as testified to by the servant and another, although there was evidence that he had given the servant permission several months before to use the car on a specific occasion for a definite purpose.

2.   MASTER AND SERVANT—*liability of bailee for wrongful acts of servant outside scope of employment.*   A bailee of an automobile for hire is liable to the owner of the car for damages caused

by the wrecking of such car by a servant of the bailee who wrongfully took the car from the garage where it was stored and while using it for "joy riding" wrecked it, even though the act of the servant was wholly without the scope of his employment.

3. PARTNERSHIP—*proof of relationship.* In an action by the owner of an automobile for damages caused by the wrecking of such car by the wrongful act of a servant of the defendants, both defendants are shown to have been liable as partners where the evidence shows a former owner of the garage business sold it to the defendants and that they rented the building jointly, where such evidence is uncontradicted except by an unverified plea, although both defendants were present during the trial.

4. EVIDENCE—*admissibility of evidence as to legal purport of instruments not in evidence.* In an action against bailees as partners, it was not error to permit witnesses who had sold to defendants a garage business and leased to them garage premises to testify that they had executed to them respectively a "bill of sale" and a "lease," both of which instruments the defendants refused to produce, where the witnesses merely identified the instruments by the terms in question and did not undertake to give the contents of the instruments, even though no proper foundation was laid for secondary evidence.

5. INSTRUCTIONS—*propriety of instruction that proof in civil case must "satisfy" jury.* An instruction in an action for damages against a bailee that the latter must "satisfy" the jury that the injury sued on was not caused by the negligence of himself or his servants is improper but not grounds for reversal where it was undisputed that the injury did result from the negligence of his servant.

6. DAMAGES—*excessiveness of verdict.* A verdict of $1,500 for the loss of an automobile by the negligence of bailees thereof for hire is sustained by evidence that at the time of the destruction of the car it was worth from $1,750 to $1,850.

Appeal by defendants from the Superior Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Affirmed. Opinion filed March 10, 1924.

CHARLES HUDSON and H. T. FLETCHER, for appellants; O'BRIEN, PRYSTALSKI & OWEN, of counsel.

MOSES, ROSENTHAL & KENNEDY, for appellee; ISAAC E. FERGUSON, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff in various counts alleged that defendants as copartners operated a garage in which plaintiff kept his automobile, paying them $10 a month to care for and keep the same safely until called for by plaintiff, but that defendants failed in this respect, to the damage of the car. Upon trial plaintiff had a verdict for $1,500 and from the judgment thereon defendants appeal.

About midnight of August 28, 1918, George E. Powers, an employee of defendants, and in sole charge of the garage at this time, took plaintiff's car out of the garage for a "joy ride" with a friend and wrecked it by running into a freight train. These questions arise on the record: (1) Did Powers have permission of plaintiff to take out the car at this time? (2) Are defendants responsible to plaintiff for damages to the car caused by the negligence of their employee? (3) Was Williams a copartner with Peterson and jointly liable? (4) Were there prejudicial errors upon the trial? and (5) Are the damages excessive?

Did Powers have permission from plaintiff to take out the car? This is a question of fact. Plaintiff denies that he gave Powers permission to use his car except on one occasion about a month or two prior to the accident, when Powers asked leave to use it to take a soldier to the railroad station, but that Powers later telephoned he had gotten another car. Powers and one other witness testified that plaintiff gave Powers permission to take the car whenever he wished, but this was categorically denied by plaintiff. The jury evidently gave greater credence to the more reasonable statement of plaintiff in this regard and found that Powers took out the car upon this occasion without permission from or knowledge of the owner. This

conclusion is not contrary to the weight of the evidence.

Are defendants responsible to plaintiff for the damages to the car caused by the wrongful act of their employee? Defendants argue that when Powers left the garage at midnight and wrongfully took plaintiff's car for his own use he "instantly and automatically" ceased to be the servant of defendants because he was engaged in an unauthorized enterprise entirely outside the scope of his employment. This seems to be predicated upon the untenable assumption that servants are within the scope of their employment only when performing their duties properly, but, when not, *ipso facto* the doers are not servants. Applied generally this would annul the rule of *respondeat superior*. The question is not wholly free from difficulty, and we recognize the contrariety of opinions touching it. In *Firemen's Fund Ins. Co. v. Schreiber,* 150 Wis. 42, in which a very large number of cases are cited, the majority of the court holds, in a similar case, that the employer is not liable, but, in the able dissenting opinion is another list of many cases supporting the contrary conclusion.

It should be kept in mind that this is an action by a bailor against a bailee where the bailment is for hire. It is well established that the bailee is not an insurer and is liable only for the exercise of ordinary care in protecting the property intrusted to him, but it does not follow that the limitations on liability for a servant's negligence, in the usual action by a third party sounding in damages for tort alone, should be extended to an action for breach of a contract of bailment. In bailment the contract is in its nature a direct and personal obligation by which the bailee undertakes personally to keep safely the property committed to his care. It is an obligation from which he cannot relieve himself without the other's consent.

*Jacobs v. Grossman,* 310 Ill. 247. The actual work of guarding the property may be delegated to an employee, and in the customary way of conducting many businesses this must be done during certain hours of the day, but the bailee is not thereby relieved from the personal obligation of his contract. An employee to whom such duty is delegated stands in the place of his employer and any negligence of this employee in protecting the property is the negligence of the employer, who can be made to respond in damages caused thereby. Any other rule would have a tendency to tempt a bailee to lessen his personal liability for damages by delegating to irresponsible servants the care of the property. This would be unjust to the bailor as increasing the risk to the property and decreasing his chances of obtaining adequate compensation for damages thereto. The primary and essential object of this contract of bailment was the safety of the automobile, and no rule of law should tend to diminish this by putting a premium on lack of personal attention.

The rule is aptly stated in Wood on Master and Servant, sec. 321, p. 644:

"When by contract, or by statute, the master is bound to do certain things, if he intrusts the performance of that duty to another, he becomes absolutely responsible for the *manner* in which the duty is performed, precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act; while, when the action sounds entirely in tort, lack of authority on the part of the servant avoids liability."

We hold that defendants in this case are liable to the plaintiff for the wrongful act of their employee, Powers, resulting in damages to the car. Among the cases tending to support this conclusion are: *Johnson v. Brennan,* 226 Ill. App. 661; *Corbett v. Smeraldo,*

91 N. J. L. 29; *McLain v. West Virginia Automobile Co.*, 72 W. Va. 738; *Morgan Millwork Co. v. Dover Garage Co.*, 30 Del. 383, 108 Atl. 62; *Wilson v. Wyckoff, Church & Partridge*, 133 N. Y. App. Div. 92, 117 N. Y. S. 783, aff'd 200 N. Y. 561; *Mehesy v. Mission Garage*, 60 Cal. App. 275, 212 Pac. 643. See also, 45 L. R. A. (N. S.) 315, and the numerous supporting cases cited in the dissenting opinion in *Firemen's Fund Ins. Co. v. Schreiber*, 150 Wis. 42.

Was Williams a copartner? This is a question of fact, and while the evidence is not as definite as it should be, there was sufficient to justify the jury in finding that he was a copartner with Peterson. The garage had been owned by Arthur Dahlgren, doing business under the name of the Service Garage. He testified that in April, 1918, he had an interview with Williams and Peterson with a view to selling the business to them; that after showing them the whole place and telling "them all about the business" he "sold it to Williams and Peterson"; that Williams paid him for the business by check and that he made a bill of sale transferring the business. The owner of the premises also testified that Williams and Peterson interviewed him about leasing the garage and that he "executed a lease to the two gentlemen at that time"; that he only knew Williams and Peterson as tenants; that they paid the rent to his real estate agent. It should also be considered that Williams' denial of partnership in his plea was not under oath, and that while both Williams and Peterson were present at the trial, neither of them took the stand to disprove a partnership or to deny the statements of the witnesses referred to. Where the evidence tends to establish a fact which is peculiarly within the power and to the interest of the opposing party to disprove, if false, his failure to attempt to disprove it strengthens the probative force of the evidence tending to

prove it.   23 Corpus Juris, sec. 1791, p. 47; *Century Parlor Furniture Co. v. Harty Bros. & Harty Co.,* 141 Ill. App. 17.   Upon the record the fact of the partnership of defendants was sufficiently proven.

It is especially urged that the trial court committed error in permitting the witness, Arthur Dahlgren, to testify to the contents of the bill of sale, and the witness, Frank Dahlgren, to testify as to the contents of the lease of the premises.   These witnesses did not undertake to give the contents of these instruments; they simply used words of identification.   Ordinarly where the terms of a document are in issue, secondary evidence thereof is inadmissible unless a proper foundation is laid, but we do not understand that a witness may not describe an instrument as a "lease" or "bill of sale" or that a lessor could not testify that he leased premises to certain parties, naming them, or that such persons were his tenants.   This view is supported by *Massey v. Farmers' Nat. Bank,* 113 Ill. 334, where it is said that references to written instruments by a witness, for the purpose of making his statements intelligible, are to be regarded but mere inducement to the more material parts of his testimony.   "To hold otherwise would defeat the ends of justice."   To the same effect are *Minnesota Debenture Co. v. Johnson,* 96 Minn. 91, 107 N. W. 740; *Coonrod v. Madden,* 126 Ind. 197.   The general rule is stated in 2 Wigmore on Evidence (2nd ed.), sec. 1242. While it is true that the fact of partnership was an issue here, in view of the unwillingness of the defendants to produce either the written bill of sale or the lease or any evidence whatever to disprove the testimony of the Dahlgrens, we are unwilling to hold that the rulings of the court in this regard were so erroneous as to require a reversal.   However, we would not wish to be understood as stating a general rule applicable to all cases.

The instruction at the instance of the plaintiff that the bailee must ''satisfy the jury that the injury was not occasioned by the negligence of himself or his servants or agents'' is perhaps open to criticism. Similar instructions that a party ''must satisfy a jury'' have been repeatedly condemned and it was extremely hazardous for plaintiff to request the court to give such an instruction. We think, however, that the error may be neutralized by the consideration that the fact of which the jury must be satisfied was that the damages were occasioned by the negligence of Powers, and there is no dispute about this. Other instructions may perhaps be criticised, but the errors therein are not sufficient to compel a reversal.

The verdict for $1,500 was justified by the uncontradicted evidence of a great advance in prices of automobiles between the time plaintiff purchased his automobile and the time of the accident, when it was worth from $1,750 to $1,850.

Other points suggested have been considered, but they are not vitally important. For the reasons above indicated, we are of the opinion that the verdict was proper, and that the errors complained of do not make a reversal necessary.

The judgment is therefore affirmed.

*Affirmed.*

MATCHETT, P. J., and JOHNSTON, J., concur.