HORTON S. CALLAND v. MARTIN V. NICHOLS ET AL.

[FILED OCTOBER 7, 1890.]

1. **Agistment**: NEGLIGENCE: BURDEN OF PROOF. Where there is no express contract as to the kind of feed and degree of care to be given by one who takes cattle to keep through the winter, he is bound to provide reasonable and ordinary feed for such stock, and to use reasonable and ordinary care to protect them from injury; but where a number of such cattle die while in charge of the bailee, the bailee upon stating that fact to the owner—in other words, accounts for the cattle—the burden of proof of negligence is upon the owner.

2. ———: EVIDENCE. *Held,* That a clear preponderance of the evidence showed the want of reasonable and ordinary care in feeding and caring for the stock in controversy.

ERROR to the district court for Gage county. Tried below before APPELGET, J.

*Pemberton & Bush,* for plaintiff in error, cited: *Ransom v. Getty,* 14 Pac. Rep. [Kan.], 487; *Teal v. Bilby,* 123 U.

S., 572; *Mansfield v. Dole*, 61 Ill., 191; *Rey v. Toney*, 24 Mo., 600 [69 Am. Dec., 444]; *Wood v. Remick*, 9 N. E. Rep. [Mass.], 831; *Malaney v. Taft*, 15 Atl. Rep. [Vt.], 327; *Mills v. Gilbreth*, 74 Am. Dec., 487.

*A. H. Babcock* (*Griggs & Rinaker* with him), *contra*, cited: *Maynard v. Buck*, 100 Mass., 40, 49; *Best v. Yates*, 1 Vent. [Eng.], 268; *Leck v. Maestaer*, 1 Camp. [N. P.], 138; Schouler, Bailment [2d Ed.], secs. 23, 101; Edwards, Bailment, 236; Story, Bailment, sec. 443; 2 Parsons, Contracts, 131.

MAXWELL, J.

This action was brought in the district court of Gage county by the plaintiff against the defendant to recover for feeding and caring for certain cattle of the defendant.

On the trial of the cause the jury returned a verdict for the defendant, upon which judgment was rendered.

The plaintiff alleges in his petition that "in the month of August, 1887, he made and entered into a contract with defendants to furnish feed for and take care of not to exceed 200 head of cattle for said defendants, jointly, which cattle were to be furnished to plaintiff for that purpose by said defendants. * * * By said contract plaintiff was to be paid the sum of $4.50 per head from defendants, for feeding and taking care of said cattle. That pursuant to said contract defendants furnished plaintiff 123 head of cattle, which plaintiff received and took charge of under said contract, and fed and cared for as provided in said contract; that plaintiff has fully and faithfully performed all the conditions of said contract by him to be done and performed; that defendants have paid plaintiff therefor only the sum of $150, and there is now due and owing from defendants to plaintiff on said contract the sum of $403.50, which defendants refuse and neglect to pay."

To this the defendants answered as follows:

" The defendants, for answer to plaintiff's petition, say they admit that on the 10th day of August, 1887, the plaintiff made and entered into a contract with defendants to take 100 head of cattle or more, not to exceed 200 head, and keep them in good shape, give them good care and plenty of food, and to deliver the same to defendants, or order, in the spring of 1888, and at a time when they can live well on grass, and in good condition, for the sum of $4.50 each, to be paid for in full by the defendants, on the delivery of the cattle in good condition, in the spring.

"That on the 7th day of September, 1887, the defendants delivered and the plaintiffs received from the defendants 123 head of cattle, in good and healthy condition, to be cared for in good shape, properly fed, kept, cared for, and to be redelivered to defendants in good condition, in the spring of 1888, according to the terms and provisions of said contract.

\*        \*        \*        \*        \*        \*        \*

" The plaintiff then received said 123 head of cattle upon the above conditions, and undertook to use due and proper care in the management of said cattle, to properly feed, water, and shelter the same, and redeliver the said 123 head of cattle in the spring of 1888, in good condition, to the defendants. But the said plaintiff, not regarding his said promise and undertaking, did not, nor would take due and proper care of said cattle, and did not properly feed, water, and shelter the same, and when he was requested to redeliver the said 123 head of cattle at the time mentioned in said agreement, he redelivered only seventy-four head of said cattle, and he has failed and neglected to deliver forty-nine head, the balance thereof, or any part thereof, nor paid the value thereof, amounting to the sum of $980, though often requested so to do, but, on the contrary thereof, the plaintiff so negligently and carelessly conducted himself with respect to the said cattle, and took so little care of them, and failed to properly feed, water, and

shelter them, and that by and through mere carelessness, negligence, and improper conduct of the said plaintiff and his servants in that behalf, the said 123 head of cattle all became poor, thin in flesh, and in a weak condition, and forty-nine head of said number died from the want of proper food, shelter, care, and attention on the part of the plaintiff, and while the same were in his custody, to the defendants' damage in the sum of $980.

"The defendants further allege that in order to prevent the whole number of said cattle from dying of starvation and exposure, they were compelled to and did incur great expense, to-wit, the sum of $199, in furnishing said cattle with proper food, care, and attention while the same were in plaintiff's possession under the contract aforesaid, and he was under obligation to furnish the same, but failed, neglected, and refused to do so, to defendant's damage $199.

The reply need not be noticed.

The clear weight of testimony tends to sustain the allegations of the answer as to the negligence of the plaintiff in feeding and caring for the cattle.    The fact that so large a number of them died while under his care is itself a strong circumstance tending to show negligence.    There is some testimony in the record tending to show that the cattle were in a poor condition when received by the plaintiff. There is considerable more testimony, however, tending to show that they were in ordinary condition when received. There is no testimony whatever that the plaintiff made any objection to the condition of the cattle when he received them, and he seems to have been satisfied therewith.    They were young cattle which had been raised in Iowa and shipped into this state.

Where there is no express contract as to the kind of feed and degree of care to be given by one who takes cattle to keep through the winter, he is bound to provide reasonable and ordinary feed for such stock, and to use reason-

able and ordinary care to protect them from injury; but where a number of such cattle die while in charge of the bailee, the bailee upon stating that fact to the owner—in other words, accounts for the cattle—the burden of proof of negligence is upon the owner.

The burden of proof to show negligence where the stock has been accounted for, is upon the owner of the stock. In our view the defendant has clearly established such negligence.

Objections were made to certain instructions which related more particularly to the counter-claim of the defendant. As the defendant was allowed nothing on this counter-claim, no error can be predicated on the instructions.

There is no material error in the record and the judgment is

AFFIRMED.

THE other judges concur.